UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF ) | |
| ) | |
| UNITED FOOD AND COMMERCIAL ) | CASE No. 08 C 1411 |
| WORKERS LOCAL 1546 ) | |
| ) | Judge Conlon |
| Plaintiff, ) | Magistrate Judge Valdez |
| ) | |
| v. ) | |
| ) | |
| ILLINOIS AMERICAN WATER ) | |
| COMPANY ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

I.   INTRODUCTION

Defendant, Illinois-American Water Company ("Illinois American Water" or the "Company"), by and through the undersigned counsel, has filed an Application to Vacate an Arbitrator's Award in this Court pursuant to 9 USC §10 of the Federal Arbitration Act ("FAA"). This Application seeks to vacate the February 21, 2008 arbitration Award ("the Award") of Arbitrator Martin H. Malin. Illinois American Water moves this Court to enter judgment in its favor pursuant to Federal Rule of Civil Procedure 56 and Northern District Local Rule 56.1. As set forth in the accompanying Statement of Uncontroverted Material Facts, the undisputed facts in this case clearly establish that Arbitrator Malin ignored the plain and unambiguous language of the parties' Collective Bargaining Agreement ("CBA") and Last Chance Agreement ("LCA"). He then issued an Award that exceeded his powers and so imperfectly executed them that he did not make a mutual, final, and definite award upon the subject matter. In accordance with applicable precedent, the Award must be vacated.

## II.   ARGUMENT

### A.   An Arbitration Award Must Be Vacated When the Arbitrator Exceeds His Powers

It is well established that labor arbitration awards are not immune from judicial oversight, and a court may vacate an award if an arbitrator violates certain fundamental principles of contract interpretation. The Supreme Court of the United States has made it clear, an "arbitrator may not ignore the plain language of the contract." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987). An arbitrator "is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice," and, accordingly, an "<u>award is legitimate only so long as it draws its essence from the collective bargaining agreement</u>." *United Steelworkers v. Enterprise Wheel & Car Corp.*,[1] 363 U.S. 593, 597 (1960) (emphasis added); *Tootsie Roll Indus., Inc. v. Local Union #1*, 832 F.2d 81 (7th Cir. 1987). Indeed, "[w]hen the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." *Id.* at 597; *Tootsie Roll Indus., Inc.* at 83; see also *Young Radiator Company v. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America*, 734 F.2d 321, 323, 325 (7th Cir. 1984) (an arbitration award will not be enforced when the arbitrator "fail[s] to confine himself to the terms of the [parties'] agreement.").

The Supreme Court's and Seventh Circuit's holdings fall directly in line with the language of the Federal Arbitration Act, the law at issue in the instant case, which provides that a district court may make an order vacating an arbitrator's award where the arbitrator exceeded his

---

[1] Although *Enterprise Wheel* was decided under Section 301 of the Taft-Hartley Act, now the Labor Management Relations Act, the test for review of arbitration awards is the same under the Labor Management Relations Act, the Federal Arbitration Act and the Railway Labor Act. See *Ethyl Corp. v. United Steelworkers of America, AFL-CIO-CLC,* 768 F.2d 180, 184 (7th Cir. 1985) quoting *Loveless v. Eastern Air Lines, Inc.*, 681 F.2d 1272, 1276 (11th Cir. 1982).

or her powers, or so imperfectly executed them, that a mutual, final, and definite award upon the subject matter was not made. 9 U.S.C. §10(a)(4). Arbitrators exceed their powers when they "disregard the contract and implement their own notions of what is reasonable and fair." *Hill v. Norfolk & Western Ry. Co.*, 814 F.2d 1192, 1195 (7th Cir. 1987). They cannot shield themselves from judicial correction by merely "making noises of contract interpretation." *Ethyl Corp. v. United Steelworkers of America, AFL-CIO-CLC,* 768 F.2d 180, 187 (7th Cir. 1985). Indeed, where an arbitrator ignores a contract, he exceeds his powers and, pursuant to 9 U.S.C. §10 (the FAA), the award should be vacated. *First Commercial Financial Group, Inc. v. Baghdoian*, 812 F.Supp. 837 (N. D. Ill. 1993) (citing *Chicago & Northwestern Transp. Co. v. United Transp. Union,* 905 F.2d 171, 173 (7th Cir. 1990)).

In particular, in cases involving last chance agreements, as in the instant case, courts will vacate arbitration awards for failing to adhere to the parties' last chance agreement. *See Tootsie Roll Indus., Inc. v. Local Union #1*, 832 F.2d 81 (7th Cir. 1987); *Boise Cascade Corp. v. Paper, Allied-Industrial, Chem. & Energy Workers, Local 7-0159*, 309 F.3d 1075 (8th Cir. 2002); *Cooper Nat. Res., Inc. v. Int'l Union of Operating Eng'rs, Local 351*, 163 F.3d 916, 919 (5th Cir. 1999); *Coca-Cola Bottling Co. v. Teamsters Local Union No. 688*, 959 F.2d 1438 (8th Cir. 1992); *Ohio Edison Co. v. Util. Workers Union of Am., Local 457*, 947 F.2d 786, 787 (6th Cir. 1991).

### B. This Court Must Vacate Arbitrator Malin's Arbitration Award Because the Arbitrator Undoubtedly Exceeded His Powers

The instant matter is a classic case of an arbitrator resolving the parties' dispute according to his own private notions of justice and ignoring the parties' agreement. In so doing, Arbitrator Malin exceeded his powers and his award must be vacated.

1.   **The Arbitrator Made Noises of Contract Interpretation But Ignored the Plain Language of the LCA**

The facts are straightforward and undisputed. Williams was subject to termination for twice violating Illinois American Water's Employees' Guide for Conduct. See Defendant's Statement of Uncontroverted Material Facts at ¶ 16, 17 (hereinafter "SUMF"). In lieu of termination, the parties executed a Last Chance Agreement ("LCA") for Williams which states, in no uncertain terms, that the LCA reflects the parties' entire agreement and supersedes any conflicting provision or right under the parties' Collective Bargaining Agreement. SUMF at ¶18-20. In the event Williams' was terminated for violating the LCA, the LCA provides that Williams can grieve only whether he engaged in the conduct which violated the LCA. SUMF at ¶ 27. If Williams engages in conduct that violates the LCA, the LCA specifically mandates, in unambiguous language, that <u>an arbitrator will not have authority to modify the discharge to a lesser penalty</u>. SUMF at ¶ 28 (emphasis added). The conduct at issue here was Williams' responsibility for arranging a repayment schedule with Illinois American Water. SUMF at ¶ 21. Williams failed to adhere to that contingency thereby violating the LCA. SUMF at ¶ 22-23, 32, 38. As a result, Illinois American Water terminated his employment. SUMF at ¶ 24. Hence, under the LCA, Williams' termination must be enforced as the conduct violated the LCA. Inexplicably, however, Arbitrator Malin reinstated Williams. In so doing, the Arbitrator issued a result-driven conclusion which makes no logical or legal sense and defies all bounds of rationality.

Specifically, despite finding the LCA valid and enforceable and despite finding that Williams had breached one of the conditions of the LCA, Arbitrator Malin inexplicably decided to reinstate Williams on the unsupported premise that *"the Last Chance Agreement does not permit the discharge of Williams for failure to comply with a provision of the Agreement while*

*the validity of that provision is subject to a proper, good faith, non-frivolous challenge.*" SUMF at ¶ 33. The LCA, however, makes no mention of prohibiting discharge because "the validity of one of its provisions is subject to a proper, good faith, non-frivolous challenge." SUMF at ¶ 36. The LCA makes no mention of a challenge at all. Instead, the LCA expressly <u>mandated</u> discharge if Williams violated the LCA, as happened when he failed to arrange the required repayment schedule. The language also expressly states that if he is terminated for violating the LCA, an arbitrator will not have authority to modify the penalty. SUMF at ¶ 37. Yet, Arbitrator Malin modified the parties' LCA and in so doing simply used gobbledygook language to buttress his result-driven conclusion. While trying to disguise the illogical award by referencing "generally accepted principles of contract interpretation" (SUMF at ¶ 1; Exhibit 1 at p. 18), Arbitrator Malin ultimately did exactly that which the Seventh Circuit has expressly condemned – he made "noises" of contract interpretation but improperly modified the agreement and ignored unambiguous language. *Anheuser-Busch, Inc. v. Local Union No. 744, Affiliated with the International Brotherhood of Teamsters*, 280 F.3d 1133, 1144 (7th Cir. 2002). Arbitrator Malin's Award makes no logical sense and certainly does not reconcile with the parties LCA – an agreement to which the parties contracted and are bound, even according to the Arbitrator.

    2.    **The Arbitrator Mistakenly Reached Outside the Parties' Last Chance Agreement When the Last Chance Agreement Was Unambiguous**

A review of the LCA establishes that none of its provisions are unclear, ambiguous or otherwise require construction or elucidation. Significantly, the Union <u>never</u> contended, nor does it now, that the LCA is ambiguous. Indisputably, the LCA is clear and unambiguous. Therefore, the Arbitrator should not have reached outside the LCA to fashion the award. Carefully written, well-reasoned, and thoroughly negotiated contracts are presumptively complete. *Regensburger v. China Adoption Consultants, Ltd.*, 138 F.3d 1201, 1206 (7th Cir.

1998). Thus, there is no need for an arbitrator, in reaching a desired result, to "interpret" an unambiguous contract by reaching outside the contractual language. *Anheuser-Busch, Inc.*, 250 F.3d at 1139. Contracts would not mean *anything* if courts approved of the actions of arbitrators and allowed them to completely ignore, disregard and cast aside clear and unambiguous contract language. *Id.* at 1144.

Again, Arbitrator Malin made clear that the LCA is valid and enforceable. SUMF at ¶ 31. Once the Arbitrator found that Williams failed to comply with one of the LCA's conditions, he had no choice but to uphold Williams' termination. *See Coca-Cola Bottling Co. v. Teamsters Local Union No. 688*, 959 F.2d 1438 (8th Cir. 1992) (holding that once the arbitrator determined that the triggering event had occurred, he was obliged to follow the language of the LCA.) Indeed, the LCA leaves no room for any penalty other than discharge. According to its plain language:

> "**Failure to comply with any of these conditions will result in immediate termination**. ... The Union and the Employee expressly waive any right to file a grievance or other claim regarding Employee's discharge under this Agreement, except to contest the fact of what occurred. **If the conduct occurred, an Arbitrator will not have any authority to modify the discharge to a lesser penalty**. ... This Agreement reflects the parties' entire agreement..."

SUMF at ¶ 21, 37 (emphasis added). Rather than uphold Williams' termination, as was required of him after concluding the LCA was valid and enforceable, Arbitrator Malin completely disregarded the language of the LCA and reinstated Williams. In so doing, the arbitrator improperly reached outside the LCA and fashioned an award contrary to its unambiguous language. As such, he undoubtedly exceeded his powers and the Award must be vacated.

### 3. The Arbitrator Improperly Based the Award Upon His Own Notions of Reasonableness

The language Arbitrator Malin used to fashion the Award evidences that he considered an impermissible criterion in arriving at his flawed conclusion. In the Award he states, "…it would be grossly <u>unreasonable</u> to allow for discharge of an employee for failure to comply with a provision of an agreement while the validity of that agreement was subject to good faith, non-frivolous attack." SUMF at ¶ 34 (emphasis added). Effectively, Arbitrator Malin admitted that he ignored the language of the parties' agreement and instead factored in what he felt was <u>reasonable</u> with respect to the outcome. Such practice is strictly forbidden for arbitrators when the language of the parties' agreement is contrary and unambiguous, as it is here.

The same situation occurred in *Anheuser-Busch, Inc. v. Local Union No. 744, Affiliated with the International Brotherhood of Teamsters*, 280 F.3d 1133 (7th Cir. 2002) when an arbitrator injected his personal opinion as to the "fairness" of the employer's actions. In that case, the Seventh Circuit held,

> "…the word 'fairness' is as wide and as deep as the ocean and can have a multitude of meanings depending on an individual arbitrator's personal whims and caprice. Thus, any decision motivated by an arbitrator's view of what is 'fair' is prohibited by the rule that 'an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice,' and that 'courts have no choice but to refuse enforcement of the award' when the award fails to 'draw its essence from the collective bargaining agreement.' The arbitrator's reliance on the supposed 'unfairness' of the employer's conduct is also at odds with our prior holding that 'the arbitrator cannot dress his policy desires up in contract interpretation clothing.'"

*Id.* at 1143 (citations omitted). By taking it upon himself to right what the arbitrator perceived to be a wrong in the workplace, the arbitrator in *Anheuser Busch* improperly injected his personal notions of fairness into his decision and consequently manifested an infidelity to his obligation to follow the language of the contract and not to add to, modify or change any portion of the

thoroughly negotiated agreement. *Id.* at 1144. Instead of using the word "fair," however, Arbitrator Malin used the word "reasonable" – a like word which similarly has a multitude of meanings depending on an individual arbitrator's personal whims and caprice. Just as in *Anheuser Busch*, Arbitrator Malin took it upon himself to right what he perceived to be a wrong in Illinois American Water's workplace and improperly injected his notions of reasonableness into the award. In so doing, he too manifested an infidelity to his obligation to follow the language of the contract. Any decision motivated by Arbitrator Malin's view of what is "reasonable" is prohibited.

An Eighth Circuit decision is also instructive on this point. In *Boise Cascade Corp. v. Paper, Allied-Industrial, Chem. & Energy Workers, Local 7-0159*, 309 F.3d 1075 (8th Cir. 2002), the employer and union brokered a LCA which imposed strict attendance requirements on the employee. After the employee was terminated for failing to report to work, the arbitrator ordered the employee's reinstatement. In affirming the district court's decision to vacate the arbitral award, the Eighth Circuit explained that, "[a]lthough the arbitrator stated that the sole issue before him was whether [the employee] violated the LCA, he effectively undertook a 'just cause' analysis, finding that [the employee's] absence was not 'frivolous' because her absence was caused by a desire to enter into an in-patient counseling program." *Id.* at 1085. Emphasizing that a LCA renders a just cause provision in the parties' CBA irrelevant, the Court reversed the award on the grounds that the arbitrator chose "to balance the equities of the situation, rather than to interpret and apply the agreement." *Id.* at 1086. In the instant case, Arbitrator Malin also chose to balance the equities and "reasonableness" of the situation, rather than interpret and apply the LCA. Although the Arbitrator attempted to disguise his analysis by stating the validity of the discharge must be analyzed under the LCA, he effectively undertook a "just cause"

analysis when the LCA rendered such analysis irrelevant. In so doing, Arbitrator Malin exceeded his powers. Consequently, the Award must be vacated and Williams' termination upheld.

As the Seventh Circuit held in a similar last chance agreement case, even if the phrase or term at issue is believed to be harsh or "unreasonable," the parties nonetheless agreed to it and the contract is exactly what it purports to be – a "last chance" agreement. *Tootsie Roll Indus., Inc. v. Local Union #1*, 832 F.2d 81 (7th Cir. 1987) (holding the arbitrator inappropriately applied the law of the shop and effectively eliminated the part of the parties' agreement which stated the employee would be terminated if absent "for any reason whatsoever."). As did the arbitrator in *Tootsie Roll Indus., Inc.*, Arbitrator Malin completely ignored and effectively eliminated the language in the parties' agreement which provides, "[f]ailure to comply with any of these conditions will result in immediate termination." (See Exhibit 4 at ¶2). The rule is clear – arbitrators are without authority to disregard or modify plain and unambiguous provisions. *Zeigler Coal Co. v. District 12, United Mine Workers of America*, 484 F.Supp. 445 (C.D. Ill. 1980) (vacating an award under §10 of the FAA where the arbitrator admitted his opinion was contrary to the express language of the contract and improperly modified the contract thereby dispensing his own brand of industrial justice). Because Arbitrator Malin disregarded and modified the undisputedly unambiguous provisions of the parties' LCA, he exceeded his powers and this Court should vacate the Award.

### III. CONCLUSION

The instant case is, by all accounts, a classic case of an arbitrator ignoring the parties' agreement and improperly dispensing his own brand of industrial justice. The Arbitrator's Award was result-driven and based improperly upon what he felt was reasonable under the

circumstances, contrary to the unambiguous language of the parties' LCA. Arbitrators, however, cannot simply choose to ignore the plain language of an agreement in order to fashion an award that comports with their own notion of what the result should have been. *See Enterprise Wheel*, 363 U.S. at 597 ("An arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice."); *Northern Indiana Pub. Serv. Co. v. United Steelworkers of America, AFL-CIO-CLC*, 243 F.3d 345, 347 (7th Cir. 2001) ("The Arbitrator cannot dress his policy desires up in contract interpretation clothing."). Because Arbitrator Malin ignored unambiguous contract language and substituted his own brand of justice, the Award must be vacated and Williams' termination upheld.

WHEREFORE, for the foregoing reasons, Illinois American Water respectfully requests this Court grant its Motion for Summary Judgment, enter judgment in its favor vacating the February 21, 2008 Award of Arbitrator Malin, uphold Williams' termination, and award such further relief as the Court deems just and appropriate.

Respectfully submitted,

HUSCH BLACKWELL SANDERS LLP

/s/ Terry L. Potter
Terry L. Potter #3129064
720 Olive Street – Suite 2400
St. Louis, Missouri 63101
(314) 345-6000
(314) 345-6060 (facsimile)
Terry.Potter@huschblackwell.com

Counsel for Defendant Illinois-American Water Company

## CERTIFICATE OF SERVICE

The undersigned certifies on this 5th day of June, 2008, a copy the foregoing was served upon the following individual via the Court's electronic case management system:

Charles Orlove
Jacobs, Burs, Orlove, Stanton and Hernandez
122 South Michigan Avenue, Suite 1720
Chicago, Illinois 60603

/s/ Terry L. Potter