UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF ) | |
| ) | |
| UNITED FOOD AND COMMERCIAL ) | CASE No. 08 C 1411 |
| WORKERS LOCAL 1546 ) | |
| ) | Judge Conlon |
| Plaintiff, ) | Magistrate Judge Valdez |
| ) | |
| v. ) | |
| ) | |
| ILLINOIS AMERICAN WATER ) | |
| COMPANY ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S STATEMENT OF UNCONTROVERTED MATERIAL FACTS**

Defendant, Illinois-American Water Company ("Illinois American Water" or the "Company"), by and through its undersigned counsel, and in accordance with Fed. R. Civ. P. 56 and N.D. Ill. L.R. 56.1, hereby submits this Statement of Uncontroverted Material Facts in Support of its Motion for Summary Judgment.

### I. Introduction to the Parties

1. Defendant Illinois American Water provides water and wastewater services in Illinois. *See* Opinion and Award of Arbitrator Malin, at 4, attached hereto as Exhibit 1.

2. Plaintiff, United Food and Commercial Workers Local 1546 (the "Union"), is a labor organization and is the exclusive bargaining representative for all water plant operators, wastewater treatment plant operators, maintenance workers, meter readers, chemists, lab technicians, and all other servicepersons of Illinois American Water. *See* Collective Bargaining Agreement at 6, attached hereto as Exhibit 2 ("CBA").

## II. Jurisdiction and Venue are Proper

3. The Federal Arbitration Act ("FAA") authorizes the United States district court in the district where an arbitration award is made to issue an order vacating the award upon the application of any party to the arbitration. 9 U.S.C. §10.

4. Defendant Illinois American Water brings its Application to Vacate an Arbitrator's Award pursuant to the FAA.

5. Venue is proper in the Northern District of Illinois because the arbitration award at issue was made within the Northern District of Illinois.

## III. Background Facts: Williams' Failure to Maintain a Water License

6. Glenn Williams ("Williams") was employed by Illinois American Water at the Company's Chicago-Metro operations in Northern Illinois as an Operator and was an employee member of the Union. Ex. 1 at 4.

7. Williams was responsible for the operation, routine servicing and care of plant equipment for wastewater treatment and/or water treatment processes. Ex. 1 at 4.

8. The minimum requirements for Williams' position include, among other things, state licensing as either a Class S-3 Wastewater Treatment Plant Operator or a Class C Water Plant Operator. Ex. 1 at 4. Such Operator licenses are issued by the Illinois Environmental Protection Agency "IEPA" to the Operators and must be renewed every three years. Ex. 1 at 4.

9. The wages Illinois American Water pays to its employees are tied to the level of license the employee holds. The pay structure varies according to the employee's level of licensing. See Arbitration Hearing Transcript at 118, attached hereto as Exhibit 3; Ex. 1 at 8.

10. During the relevant time period, Williams was paid at a higher wage rate because the Company believed that he maintained a Class A license. Ex. 3 at 288.

11. As of 2003, the IEPA required operators to take continuing education in order to renew and maintain operator licenses. Holders of Class A and B water plant operator licenses must receive 30 units of continuing education to renew their licenses. Ex. 1 at 4.

12. According to the CBA, employees are responsible to acquire enough continuing education credits to maintain their license. Ex. 2 at 37.

13. Williams was aware that he needed continuing education credits to maintain his license. Ex. 3 at 268-269, 290.

14. In October 2006, the Employer learned that Williams failed to maintain his water license in violation of the CBA and that his license had expired almost 10 years prior, in 1997. Ex. 1 at 5; Ex. 3 at 127-128.

15. Williams' failure to maintain his license was a violation of Offense Number 12 of the Employees' Guide for Conduct ("neglect of assigned duty").

16. Only a few months earlier, Williams had been disciplined under Offense Number 12 for another instance of neglect of duty where he failed to respond promptly to three

3

emergency calls after advising the Central Control Operator that he would respond. Ex. 3 at 284; Ex. 1 at 15.

17.     The Employees' Guide for Conduct calls for termination for a second violation of Offense Number 12. Ex. 1 at 4.

### IV.     The Last Chance Agreement

18.     In lieu of termination, Williams was offered a Last Chance Agreement ("LCA"), subject to certain conditions: 1) he would be suspended for thirty (30) workdays without pay and admit the suspension was based on just cause; 2) he would agree to reimburse the Company for overpayment of wages (up to one year of overpayment) that he received based on his representation that he maintained a Class "A" license when he did not; and 3) he would obtain at least a Class "B" level license. *See* LCA attached hereto as Exhibit 4.

19.     Williams was represented by the Union when the LCA was presented, and both he and his Union representative signed the LCA and agreed to the stated conditions. Ex. 4; Ex. 3 at 155; Ex. 1 at 6.

20.     The LCA specifically reflected the parties' entire agreement and merged all agreements, representations, and understandings among the parties. The LCA also superseded any conflicting provision or right under the parties' CBA. Ex. 4.

21.     Under its second condition, the LCA specified that as a condition of remaining employed by Illinois American Water, Williams was responsible for arranging a repayment schedule with the Company within two weeks of signing the LCA. Ex. 4.

22. Williams, however, failed to arrange a repayment schedule with the Employer within those two weeks. Ex. 1 at 8.

23. The Company made several attempts to have Williams enter into a repayment schedule. On March 2, 2007, nearly four months after the LCA was executed, the Company offered Williams one final opportunity to sign a repayment schedule, but Williams refused. Ex. 1 at 8.

24. The Company subsequently discharged Williams for violating the LCA. Ex. 1 at 8; Ex. 3 at 283-284.

25. Williams grieved both his suspension and his discharge in accordance with procedures set forth in the CBA. Ex. 1 at 8.

26. The LCA governed both of Williams' grievances as it acted as a release and settlement of any possible grievances related to Williams' suspension, and, it provided that Williams expressly waived any right to grieve his discharge if he was terminated for violating the LCA. Ex. 4.

27. The only exception for filing grievances provided in the LCA was that Williams could grieve whether the conduct (i.e. the violation of the LCA) occurred. Ex. 4.

28. With regard to any subsequent arbitration on the discharge, the LCA states: "If the conduct occurred, an Arbitrator will not have any authority to modify the discharge to a lesser penalty." Ex. 4.

STLD01-1420889-1

### V.     Arbitrator Malin's Erroneous Award

29. The parties proceeded to arbitration over the issue of whether the Company had cause to terminate Williams on March 2, 2007. Ex. 1 at 1.

30. A hearing was held before Arbitrator Martin H. Malin at which time the parties presented testimony and documentary evidence. Ex. 1 at 1.

31. On February 21, 2008, Arbitrator Malin issued an Award finding that the LCA executed by Williams is valid and enforceable and that Williams, the Union, and the Company are all bound by the terms of the LCA. Ex. 1 at 16-17; 19 at ¶3.

32. Arbitrator Malin also found that Williams violated one of the conditions of the LCA when he failed to set up a repayment plan. Ex. 1 at 17; Ex. 3 at 282-83.

33. Nevertheless, Arbitrator Malin also found that Illinois American Water violated the LCA when it discharged Williams because *"the Last Chance Agreement does not permit the discharge of Williams for failure to comply with a provision of the Agreement while the validity of that provision is subject to a proper, good faith, non-frivolous challenge."* Ex. 1 at 18.

34. In his award, Arbitrator Malin stated that he was interpreting the LCA in a way that would avoid an unreasonable result. Ex. 1 at 18. Specifically, Arbitrator Malin stated, *"…it would be grossly unreasonable to allow for discharge of an employee for failure to comply with a provision of an agreement while the validity of that agreement was subject to good faith, non-frivolous attack."* Ex. 1 at 18.

35. The language of the parties LCA is clear and unambiguous. Ex. 4.

36.  The LCA makes no mention of prohibiting discharge because "the validity of one of its provisions is subject to a proper, good faith, non-frivolous challenge." Ex. 4.

37.  The LCA expressly states that if a violation of the LCA occurs, the arbitrator will not have authority to modify the penalty. Ex. 4.

38.  Williams violated the LCA by not entering into the repayment schedule and, consequently, Arbitrator Malin denied Williams' grievance with respect to his suspension, repayment obligation and reduction in wage rate. Ex. 1 at 17; Ex. 1 at 17; Ex. 3 at 282-83.

39.  Arbitrator Malin did not enforce the terms of the Last Chance Agreement in that he reinstated Williams to his former position. Ex. 1 at 19.

    Respectfully submitted,

    HUSCH BLACKWELL SANDERS LLP

    /s/ Terry L. Potter
    Terry L. Potter #3129064
    720 Olive Street – Suite 2400
    St. Louis, Missouri 63101
    (314) 345-6000
    (314) 345-6060 (facsimile)
    Terry.Potter@huschblackwell.com

    Counsel for Defendant Illinois-American Water Company

STLD01-1420889-1

## CERTIFICATE OF SERVICE

The undersigned certifies on this 5th day of June, 2008, a copy the foregoing was served upon the following individual via the Court's electronic case management system:

Charles Orlove
Jacobs, Burs, Orlove, Stanton and Hernandez
122 South Michigan Avenue, Suite 1720
Chicago, Illinois 60603

/s/ Terry L. Potter