IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED FOOD AND COMMERCIAL WORKERS LOCAL 1546 <br> Plaintiff, <br><br> vs. <br><br> ILLINOIS AMERICAN WATER COMPANY <br> Defendant | Case No. 08 C 1411 <br><br> Judge Conlon <br> Magistrate Judge Valdez |

## STATEMENT OF MATERIAL FACTS
## TO WHICH THERE IS NO GENUINE ISSUE

The United Food and Commercial Workers Local 1546 ("Union"), in support of its Motion For Summary Judgment, sets forth below the material facts upon which it contends there are no genuine issues, and upon which it is entitled to judgment as a matter of law.

The facts may be found in the various documents now on file in this matter. For the reader's convenience each statement of fact will be referenced to the document on file, followed in brackets by the court document number. For the reader's further convenience, referenced documents will be abbreviated as follows:

Application To Confirm An Arbitrator's Award [1] – "App.Confirm [1]".

Application To Vacate An Arbitrator's Award [16-2] – "App.Vacate [16-2]".

Arbitrator's Opinion and Award appended to the App.Confirm [1-2] – "Award [1-2]". [1]

The parties' Collective Bargaining Agreement [16-2, Exh.A] – "CBA [16-2, Exh.A]".

The last chance agreement [16-2, Exh.B] – "LCA [16-2, Exh.B]".

Lastly, there exists in the court files the record of proceedings before the Arbitrator which consists of the entire transcript and various material exhibits.

---

[1] Both parties appended the Opinion and Award to their respective filings. The defendant's submission is appended to its App.Vacate [16-2]. For ease and consistency of references the Union will cite to the Opinion and Award it appended to its App.Confirm [1-2] as "Award [1-2]", followed by the page(s) to which reference is made.

That record is in the Union's motion to strike the defendant's answer and counterclaim [document number 12].  That motion is now moot after the court granted defendant's motion to withdraw its answer and counterclaim.  See order number 17 and document number 16.  To avoid unnecessary duplication of this voluminous material and for the ease of reference herein the Union will refer to this material as "Record [12-]" followed by the subpart of court filed document 12, and further followed by the page of the transcript, e.g. "p.", or in the case of a multi-page exhibit, the page of the exhibit, e.g. 12-__, p__.", to which reference is made.

    1.   **Description of the Parties.**  The Union is a labor organization representing employees in an industry affecting commerce within the meaning of the National Labor Relations Act ("NLRA") (29 U.S.C. §§ 142(1) and (3) and 152 (5)).  The Company is an employer in an industry affecting commerce within the meaning of 29 U.S.C. §§ 142(1) and (3) and 152 (2) of the NLRA.  The Union is the collective bargaining representative of certain employees of Illinois American Water Company ("Company").  App.Confirm [1] ¶ 2; App.Vacate [16-2] p.2.  At all material times the Union and the Company have been and are now parties to a CBA.  App.Confirm [1] ¶ 2; App.Vacate [16-2] p.2; CBA [16-2, Exh.A].

    2.   **Jurisdiction and Venue.**  The court has jurisdiction under both the Federal Arbitration Act (9 U.S.C. §§ 9 and 10) with respect to arbitration awards made in this district and the National Labor Relations Act (29 U.S.C. § 185(a)) for suits for violations of contracts between an employer and a labor organization representing employees in any district having jurisdiction of the parties.  See: *Smart v. International Brotherhood of Electrical Workers, Local 702,* 315 F.3d 721 (7th Cir.2002).  The Union is located in the City of Chicago; the Company's facility at which the Union represents employees is in Woodridge, DuPage County, Illinois.  The Arbitrator's Award was issued in Chicago, Illinois.  App.Confirm [1-2], p.19.

    3. The CBA provides, "Complaints, disputes or claims arising under and during the term of this Agreement shall be deemed grievances".  CBA [16-2, Exh.A, p.25, § 14.1].  Specifically, with respect to the discipline and discharge of

employees, the CBA provides, "The Union shall have the right…to protest such discipline or discharge…".  CBA [16-2, Exh.A, p.27, § 15.1].  The CBA further provides that after efforts to resolve any complaint, dispute or claim the parties:

> …may appoint an arbitrator to hear and decide the case.
> * * *
> The decision of the arbitrator shall be final and binding upon the Company and the Union; provided, however, that the arbitrator shall have no right to add to or detract from, or modify any of the provisions of this Agreement.  [16-2, Exh.A, p.26, step 4].

4. A dispute arose between the Union and the Company when employee Glenn Williams ("Williams") and others were disciplined for having failed to timely renew their respective water licenses issued by the Illinois Environmental Protection Agency.  Award [1-2, p.4].[2]

5. The discipline meted out to Williams was an option to sign a LCA or be terminated.  Award [1-2, pp.6-7]; LCA [16-2, Exh.B].

6. The Union grieved the discipline meted out to Williams and other employees who were disciplined for the same offense, protesting, with respect to Williams, "All punishment related to his water license expiring." and "We [Union] feel the punishment is to [sic] severe & would like a reduction".  Record [12-14, step 2 grievance meeting].  See also: Record [12-13, step 1 grievance meeting].

7. The Company and the Union were unable to resolve the issues presented by the discipline of Williams and the others, which caused the Union to invoke arbitration.  Record [12--8].

8. At the first session of the arbitration proceeding over the issue of the consolidation of all grievances, the Union and the Company stipulated that the grievance described in paragraph 6 above, *inter alia,* was "properly before the Arbitrator for resolution…". Record [12-2, pp.6-7].

---

[2]  The recitation herein of the facts presented to and decided by the arbitrator is only to give the court the context within which the issues have been posed by the App.Confirm and the App.Vacate.  By so doing it is not intended nor should it be construed that the Union seeks or agrees to re-litigate before the court the merits of the dispute involving Williams. "Courts thus do not sit to hear claims of factual or legal error by an arbitrator…". *United Paperworkers International Union v. Misco, Inc.* 484 U.S.29, 38, 108 S.Ct. 364, 370 (1987).

3

9. The Company later discharged Williams because, *inter alia,* he had not complied with all the terms of the LCA.  Record [12-11].

10. The Union also grieved the discharge of Williams, alleging "Glenn Williams was terminated without just cause".  Record [12-12].

11. The Company processed both of the Union's grievances over the discipline of Williams and others and the discharge of Williams through the contract grievance procedure.  Record [12-10 and 12-15].

12. At the second and last session of the arbitration proceeding over the merits of the grievances, which occurred after Williams was discharged, the Company and the Union stipulated, "…all conditions preceding this arbitration have either been met or waived, and this matter is properly before the Arbitrator for decision."  Record [12-4, p.90].

13. The Company and the Union further stipulated to the issue, "whether the company had cause to discipline [other employees] and Glenn Williams in November 2006".  Record [12-4, p.91 ].

14. Specifically with respect to Williams, the Company and the Union stipulated the further issue for resolution by the Arbitrator, "…whether the company had cause to terminate Glenn Williams on March 2, 2007".  Record [12-4, p. 92 ].  See also the Arbitrator's recitation of this issue.  Award [1-2, p.1, ¶ 3.]

15. The second and last session of the arbitration proceeding consumed 265 pages of transcript and 15 exhibits.  Record [12-4 through 12-7].  The parties had a full opportunity to present their respective case.  Record [12-7, p.350].

16. "Both parties filed post-hearing briefs" before the Arbitrator.  Award [1-2, p.1].

17. On February 21, 2008 the Arbitrator issued his Award.  Award [1-2, p.19].

18. With respect to Williams the Arbitrator's Award provides:

> 3. The Last Chance Agreement executed by Mr. Williams and the Union is valid and enforceable.  Mr. Williams's November 10, 2007, grievance is denied, except to the extent that the Company violated the contract when following the restoration of Mr. Williams's water licemse, it failed to restore him to his grandfathered wage rate.  The

4

> Company shall make Mr. Williams whole for the difference between the wag[e] rate to which it restored him and his grandfathered wage rate.
>
> 4. The Company violated the Last Chance Agreement when it discharged Mr. Williams. The Company shall reinstate Mr. Williams to his former position and make him whole for all compensation lost as a result of his discharge.
>
> 5. The Company may offset Mr. Williams's obligation of repayment under the Last Chance Agreement against the make whole relief awarded herein.
>
> Award [1-2, p.19, ¶¶ 3-5].

19. For the convenience of the reader, the following is the Arbitrator's findings and rationale for his opinion that the discharge of Williams was improper:

> Subsequent to the execution of the Last Chance Agreement and Mr. Williams' thirty-day suspension and return therefrom, the Company discharged Mr. Williams for his refusal to enter into a repayment plan as required by the Last Chance Agreement. At that time, the Union's grievance was pending with respect to Mr. Williams' suspension, pay reduction and repayment of wages from 2006. Moreover, the Union had advised Mr. Williams not to enter into any repayment plan with the Company so long as the grievance was pending and informed the Company of its position as well. Nevertheless, the Company defends the discharge on the ground that the Last Chance Agreement provided, "Failure to comply with any of these conditions will result in immediate termination." The question thus presented is whether this provision of the Last Chance Agreement justified discharge for failure to enter a repayment plan while a challenge to the validity of the agreement was unresolved. I hold that it did not.
>
> Initially, I note that although I have rejected the Union's challenge to the validity of the Last Chance Agreement, there was considerable substance to the Union's arguments. It is clear that the Union's challenge was undertaken in good faith and was far from frivolous. Second, that the Company unilaterally drafted the Last Chance Agreement counsels that ambiguities, overt or latent, should be resolved against the Company as drafter. Third, the act of grieving the suspension and repayment obligation and, thereby, challenging the validity of the Last Chance Agreement was an act of concerted activity for mutual aid and protection under Section 7 of the National Labor Relations Act, *See, e.g., NLRB v. City Disposal*

*Systems, Inc.* 465 U.S. 822 (1984), and the Last Chance Agreement should be interpreted in a manner that renders it consistent with the NLRA. Finally, it would be grossly unreasonable to allow for discharge of an employee for failure to comply with a provision of an agreement while the validity of that agreement was subject to good faith, non-frivolous attack. One should not infer that the partiers intended such an unreasonable result in the absence of express and explicit agreement language mandating such a result.

Thus, considering generally accepted principles of contract interpretation; that contract language be interpreted against the drafter, that it be interpreted in harmony with external law, and that it be interpreted to avoid grossly unreasonable results; I find that the Last Chance Agreement does not permit the discharge of Mr. Williams for failure to comply with a provision of the Agreement while the validity of that provision is subject to a proper, good faith, non-frivolous challenge. Therefore, Mr. Williams's discharge violated the Last Chance Agreement.

Award [1-2, p.17-18].

19. The Company has complied with the Award with respect to other employees, Award [1-2, p.19, ¶¶ 1-3]. The Company has refused and continues to refuse to honor and abide by the Award with respect to Williams. Award [1-2, p.19, ¶¶ 3-5]. Further, the Company has refused to extend the period during which the Arbitrator may retain jurisdiction to resolve any any disputes that the parties may have concerning remedy. See: Award [1-2, p.19, ¶ 7].

Respectfully submitted,

/s/Charles Orlove
One of Plaintiffs Attorneys

Charles Orlove
Jacobs, Burns, Orlove, Stanton and Hernandez
122 South Michigan Avenue, Suite 1720
Chicago, Illinois 60603-6145
Phone: 312-327-3426
Facsimile: 312-580-7175
E-Mail: corlove@jbosh.com

## CERTIFICATE OF SERVICE

I, Charles Orlove, an attorney, certify that I caused the foregoing document to be served upon the following person by filing it using the ECF system on June 6, 2008:

>Terry L. Potter
>Husch Blackwell Sanders LLP
>720 Olive Street - Suite 2400
>St. Louis, Missouri 63101

>/s/ Charles Orlove
>Charles Orlove