IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED FOOD AND COMMERCIAL WORKERS LOCAL 1546 | ) ) | |
| Plaintiff, | ) ) | Case No. 08 C 1411 |
| vs. | ) ) ) | Judge Conlon<br>Magistrate Judge Valdez |
| ILLINOIS AMERICAN WATER COMPANY | ) | |
| Defendant | | |

**MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

The United Food and Commercial Workers Local 1546 ("Union") submits this memorandum in support of its Motion For Summary Judgment.

**INTRODUCTION**

The undisputed facts present a rather ordinary situation in labor relations. Illinois American Water Company ("Company") and the Union are parties to a collective bargaining agreement ("CBA"). SMF 1[1] The Company disciplined and later discharged employee Glenn Williams ("Williams"). The discipline was embodied in a last chance agreement. SMF 5. The discharge was for failing to comply with one of the terms of the last chance agreement. SMF 9. In both instances the Union grieved, the parties were unable to resolve the grievances, arbitration was had, and in both instances the parties stipulated that the issues raised by those grievances – the provisions of last chance agreement and the discharge - were "properly before the Arbitrator for resolution…" SMF 6-8, 10-14. Thus, the Arbitrator was authorized and empowered by the parties to decide the merits of the discipline; that is, the last chance agreement and the subsequent discharge for having violated the last chance agreement. The Arbitrator, in consideration of all the facts, ordered *inter alia*, that Williams be reinstated and

---

[1] References to the Statement of Material Facts to Which There is No Genuine Issue will be made by "SMF" followed by the numbered paragraph(s) to which reference is made.

be made whole for all compensation lost, offset by what he owed to the Company under the last chance agreement.  SMP 17-19.

## ARGUMENT

In *United Paperworkers International Union v. Misco, Inc.*, 484 U.S. 29, 37-38, 108 S.Ct. 364, 370-371 (1987) the Court said:

> Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept.  Courts thus do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts.  To resolve disputes about the application of a collective-bargaining agreement, an arbitrator must find facts and a court may not reject those findings simply because it disagrees with them.  The same is true of the arbitrator's interpretation of the contract.  The arbitrator may not ignore the plain language of the contract; but the parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contract.  *Enterprise Wheel, supra,* 363 U.S. at, 599, 80 S.Ct. at, 1362.  So, too, where it is contemplated that the arbitrator will determine remedies for the contract violations that he finds, courts have no authority to disagree with his honest judgment in that respect.

In the recent case of *Hall* v. *Mattel, Inc.* 128 S.Ct. 1396, 1405 (2008 WL 762537, p. 10) (U.S.  March 25, 2008) ("*Hall*") the Court characterized the Federal Arbitration Act as:

> …substantiating a national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway.  Any other reading opens the door to a full-bore legal and evidentiary appeals that can "rende[r] informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process" (cites omitted.), and bring arbitration theory to grief in post-arbitration process.

These well-established principles, of course, have been followed in this circuit.  In *Butler Manufacturing Company* v. *United Steelworkers of America, etc.*, 336 F.3d 630 (7th Cir. 2003), the court said:

2

> [At p. 629] Agreements to arbitrate disputes have been a common feature of collective bargaining agreements for quite some time. They are entitled to a hospitable reception in the courts, so that they can play their role of reducing industrial strife and maintaining a harmonious workplace.
>
> * * *
>
> [At p. 632]  A court's role in reviewing an arbitral award is quite limited.  Apart from the general reasons for setting aside any arbitral award found in the Federal Arbitration Act, 9 U.S.C. §10, the court may consider only whether an arbitrator exceeded the scope of the authority conferred upon her by the parties' actions and agreements.  With few exceptions, as long as the arbitrator does not exceed this delegated authority, her award will be enforced.  <u>This is true even if the arbitrator's award contains a serious error of law or facts.</u>  Otherwise, as we have pointed out in the past, arbitration would just be the first of a series of steps that always culminated in court litigation and it would lose the raison d'être.  (internal citations omitted, emphasis added).

See also: *Johnson Controls, etc.*  v. *United Association of Journeymen and Appretices, etc.,* 39 F.3d 821, 824 (7th Cir. 1994), *cert. denied* 514 U.S. 1107, 115 S.Ct. 1957 (1995):

> Judicial review of arbitration awards is extremely limited.  As long as the arbitrator's award is based on his interpretation of the contract, a court cannot disturb it.  Although an arbitrator exceeds his authority if his award does not "draw its essence from the collective bargaining agreement" we are hesitant to upset the award on such grounds.  Thus, we resolve reasonable doubts concerning the arbitrator's analysis in favor of enforcing the award. (internal citations omitted).

The Company will argue that the last chance agreement, signed by Williams and a substitute steward, proscribed the Arbitrator's authority to modify any discharge penalty the Company may take toward Williams.  This claim is without merit by reason of several undisputed circumstances:  the Union, exercised its contract right to protest the discipline of the last chance agreement (SMF 3 ) as being too severe (SMF 6, 13); the Company, without objection, processed that grievance (SMF 11); and most significantly, the Company stipulated with the Union and empowered the Arbitrator to hear and resolve grievances over both the last chance agreement as discipline and the merits of

3

the discharge for failing to comply with one of the provisions of the last chance agreement. SMF 14.

Immediately after Williams signed a last chance agreement under threat of termination (SMF 5), the Union grieved on behalf of Williams and others who were similarly disciplined, protesting, with respect to Williams, "All punishment related to his water license expiring" and "We [Union] feel the punishment is to [sic] severe & would like a reduction". SMF 6. The collective bargaining agreement provides, "The Union shall have the right…to protest such discipline or discharge…". SMF 3. Obviously, the last chance agreement was part of that "punishment" and "discipline". Being unable to resolve these matters in the grievance procedure, the Union invoked arbitration on the disciplinary grievances, including its grievance over the discipline of Williams. SMF 7. The Company never claimed the Arbitrator had no authority to modify the action it took against Williams. Indeed, it stipulated with the Union that this grievance, *inter alia,* was "properly before the Arbitrator for resolution…" (SMF 8), notwithstanding the fact that the last chance agreement had been signed by Williams and a substitute steward, in lieu of Williams' dischare.

The Company later discharged Williams because, in its view, he had not complied with all the terms of the last chance agreement. SMF 9  The Union grieved the discharge of Williams, (SMF 10), again as is its right under the labor agreement. SMF 3. Again, the Company processed these grievances through the contract grievance procedure, never claiming the Arbitrator had no authority to modify the discharge. SMF 11. At the resumption of the hearing, which occurred after Williams was discharged, the parties stipulated, "…all conditions preceding this arbitration have either been met or waived, and this matter is properly before the Arbitrator for decision." SMF 12. The Company and the Union further stipulated to the issue, "whether the company had cause to discipline [other employees] and Glenn Williams in November 2006". SMF 13. Specifically, the Company stipulated with the Union the further issue for resolution by the Arbitrator, "…whether the company had cause to terminate Glenn Williams on March 2, 2007". SMF 14. Accordingly, the Arbitrator was

4

authorized by the contract, and surely by the parties' stipulations, to resolve all issues involving Williams, including the Company's discharge action, notwithstanding any earlier prohibitions contained in the last chance agreement. Or, said another way, the Company waived its rights under the last chance agreement to prohibit the Arbitrator from modifying the discharge action when it later stipulated the Arbitrator had authority to determine the Union's grievance of whether the last chance agreement was too severe and whether the later discharge was for cause.

The Arbitrator, fully empowered by the parties' stipulations and the issues before him made a careful and studied analysis of all the facts. While he was correct, his decision in any case must be confirmed, "…even if [his] award contains a serious error of law or facts". *Butler, supra,* at 632.

Any doubts with respect to whether the Arbitrator's award draws its essence from the contract must be resolved in favor of confirming the award. In *Jasper Cabinet Company* v. *United Steelworkers of America, AFL-CIO-CLC*, 77 F.3d 1025 (7th Cir.1996) the court, relying on *Misco, supra,* said:

> [at 1028-1029] An "arbitrator's award settling a dispute with respect to the interpretation or application of a labor agreement must draw its essence from the contract and cannot reflect the arbitrator's own notions of industrial justice." [citing *Misco*]. However, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority," a court cannot overturn an arbitration award. Id.
>
> We will uphold "an arbitrator's award based upon a misreading of the contract so long as the arbitrator's interpretation is derived from the language of the contract." Polk Bros., Inc. 973 F.2d at 597. Although an arbitrator exceeds her authority if her award does not "draw its essence from the collective bargaining agreement," we are hesitant to upset the award on such grounds. Id. As we said in Ethyl Corp. v. United Steelworkers of America, "[i]t is only when the arbitrator must have based his award on some body of thought, or feeling, or policy, or law that is outside the contract" that the award can be said not to draw its essence from the collective bargaining agreement. Ethyl Corp., 768 F.2d 180, 184-85 (7th Cir. 1985), cert. denied, 475 U.S. 1010, 106 S.Ct. 1184, 89 L.Ed.2d 300 (1986), Furthermore, '[w]e resolve any reasonable doubt about whether an award draws its essence from the

5

> collective bargaining agreement in favor of enforcing the award". Polk Bros., Inc., 973 F.2d at 597.

The Union's right to grieve discipline and discharge under the contract and the parties' stipulations to empower the Arbitrator to decide the discipline and the discharge destroys any claim that the Arbitrator strayed from the collective bargaining agreement.

This case closely resembles *Butler, supra.* There, "…the district court found that the arbitrator acted outside of his contractual authority when he turned to the FMLA to assess the propriety of [the company's] termination of [the employee]." 336 F.3d at 632. The 7th Circuit, reversing the decision of the district court said:

> Even if the [collective bargaining agreement] had been vaguer about the relevance of statutory protections to the parties' agreement, in this case there is a second reason for finding that the arbitrator stayed well within his authorized powers. …[D]uring the course of the arbitration, it became clear both sides were willing to allow the arbitrator to consider the FMLA. 336 F.3d at 634

This case is *a fortiori* to *Butler* because here the contract specifically permits grievances over all disciplinary and discharge issues. That alone is sufficient for the Arbitrator's powers *vis-à-vis* the last chance agreement. Moreso here, the parties specifically invoked and stipulated to the Arbitrator's power to decide the Williams' discipline, i.e. the last chance agreement, and the later discharge. Furthermore, as in *Butler,* the Company:

> …cannot have it both ways. Principles of estoppel prevent a party to arbitration from taking a position before the arbitrator that invites consideration of external law, losing the arbitration, and then seeking relief from the unfavorable arbitral award in federal court by arguing that the arbitrator lacked authority to consider the law in the first place. (cite and quote omitted) 336 F.3d at 635.

## CONCLUSION

Upon the foregoing the Union prays for an order

1. To confirm and enforce the Arbitrator's award; and

2.  For such other relief as the court may deem just and proper.

                                      Respectfully submitted,

                                      /s/Charles Orlove
                                      One of Plaintiffs Attorneys

Charles Orlove
Jacobs, Burns, Orlove, Stanton and Hernandez
122 South Michigan Avenue, Suite 1720
Chicago, Illinois 60603-6145
Phone: 312-327-3426
Facsimile: 312-580-7175
E-Mail: corlove@jbosh.com

### CERTIFICATE OF SERVICE

      I, Charles Orlove, an attorney, certify that I caused the foregoing document to be served upon the following person by filing it using the ECF system on June 6, 2008:

                            Terry L. Potter
                            Husch Blackwell Sanders LLP
                            720 Olive Street - Suite 2400
                            St. Louis, Missouri 63101

                                      /s/ Charles Orlove
                                      Charles Orlove