IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED FOOD AND COMMERCIAL WORKERS LOCAL 1546 )<br>Plaintiff, ) | Case No. 08 C 1411 |
| ) | |
| vs. ) | Judge Conlon |
| ) | Magistrate Judge Valdez |
| ILLINOIS AMERICAN WATER COMPANY )<br>Defendant | |

**PLAINTIFF'S RESPONSE TO
DEFENDANT'S STATEMENT OF UNCONTROVERTED MATERIAL FACTS
AND
PLAINTIFF'S RESPONSE TO DEFENDANT'S MEMORANDUM IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT**

Plaintiff, United Food and Commercial Workers Local 1546 ("Union"), submits this response to the Illinois American Water Company's ("Company") Motion for Summary Judgment, Statement Of Uncontroverted Material facts and Supporting Memorandum.

**INTRODUCTION**

The most serious and fatal error in the Company's submission to the court – there are others as well – but the most serious and fatal error is its total disregard of the words and deeds by which it had empowered the arbitrator to decide the issues pursuant to the standards of the collective bargaining agreement, **not** the last chance agreement. And, in connection with its motion for summary judgment and the concomitant obligation to present undisputed facts to the court, it was disingenuous for the Company to ignore and not disclose the very bases on which it had agreed to present the grievances to the arbitrator.

**UNDISPUTED FACTS AND RESULTING CONCLUSIONS**

Shorn of all its hyperbole, the Company's essential claim is the arbitrator exceeded his authority by not applying the last chance agreement. It is necessary, therefore, to examine the bases upon which the Union's grievances

were processed through the grievance procedure and the issues which the parties stipulated to the arbitrator.  The last chance agreement was not among them; the collective bargaining agreement was the touchstone.

The Union, pursuant to the collective bargaining agreement, grieved the discipline meted out to Glenn Williams ("Williams") and others.  SMF 3-6.[1]  In Williams' case the discipline was a *Hobson's Choice* to accept a last chance agreement or be terminated.  SMF 5; SUMF 18.   Specifically, the Union's grievance complained that the punishment was too severe.  SMF 6.  The Company could have at that time, but did not, take the position it now tardily asserts that the last chance agreement "…provides that Williams can grieve only whether he engaged in the conduct which violated the [last chance agreement]". Company Memorandum, p.4; see also Company Memorandum, p.6.  Nor did the Company then assert, as it does now, that the last chance agreement "…reflected the parties' entire agreement" and "…superseded any conflicting provision or right under the parties' CBA".  SUMF 20.  It could have, but did not, refuse to acknowledge a grievance that the discipline was too severe if, as it now claims, there was no right to invoke the contract right to grieve the severity of the discipline.  Instead, it processed the grievance through the contract grievance procedure, saying "[grievance] denied, no change in discipline".  SMF 11; [Doc 12-13]  See also the Company's third and last step answer in the grievance procedure, "as already noted when we met, the Company feels that the discipline issued to these three employees is warranted under the circumstances."  SMF 11; [Doc 12-15].  Thus, it agreed the grievances over the severity of the discipline were appropriately brought and processed under the collective bargaining agreement.  Or said another way, it did not claim, as it does now, that the last chance agreement foreclosed consideration of the grievance brought for Williams.

---

[1] References to the Union's Statement of Material Facts to Which there is no Genuine Issue will be made by "SMF", followed by the paragraph(s) to which reference is made.  References to Defendant's Statement of Uncontroverted Material Facts will be made by "SUMF", followed by the paragraph(s) to which reference is made.  References to undisputed facts contained in documents on file with the court will be made in brackets as "Doc" followed by the number of the document and the page(s) or exhibit number(s), if any, to which reference is made.

Any doubts over the foregoing are utterly dispelled upon an examination of what occurred when the matter came before the arbitrator.  The parties informed the arbitrator what he was to decide, i.e., granted authority to and empowered the arbitrator.  The arbitration was in two parts.  The first part dealt with whether the separate grievances over discipline administered to three employees could be consolidated.  SMF 8.  At that session there was no objection to the Union's demand for arbitration. [Doc 12-2, p.7]  The parties stipulated at that session , "…the grievances are properly before the Arbitrator for resolution…".  *Id.* and SMF 8.  One of the grievances then before the arbitrator was the Union's grievance that the discipline given to Williams – the last chance agreement – was too severe.  No word was uttered by the Company to the effect that the last chance agreement took away any of the arbitrator's authority to determine the severity of the last chance agreement.

The second session dealt with the substance of the grievances.  Williams was discharged during the period between the two sessions, before the arbitrator could rule on the severity of the last chance agreement.  What the parties agreed to is summarized in SMF 12-14.  The exact stipulations, in the record before the arbitrator and presented to the court by both parties, are as follows:

> Mr. Orlove [for the Union]:  I propose for the issues three of them.  The first two, I believe, are—we are in agreement.  Whether the company had cause, and I'll just mention cause is the word used in section 2.1 of the contract.  Whether the company had cause to discipline employees Dan Leppert, Ken Nelson, and Glenn Williams in November 2006.
>
> Mr. Potter [for the Company]:  So stipulated.
>
> Mr. Orlove:  And the thought just occurred to me, but perhaps we could clear it up as the case goes along.  Mr. Williams was given a reduction in pay in October, among other acts of discipline.  So I would like to make it clear that the issue will include discipline given to Mr. Williams in October—
>
> Mr. Potter:  Sure.
>
> Mr. Orlove: -- as well as November.

3

> Mr. Potter: It would be the whole ball of wax, so to speak. We had a number of items. We had the actual suspension, we had the restitution element for two of them, and we had the change in pay status.
>
> Mr. Orlove: Okay. Thank you. So would you want to amend this statement of the issue from November 2006 to in October and November 2006?
>
> Mr. Orlove: October and November 2006.
>
> Arbitrator Malin: Is that acceptable?
>
> Mr. Potter: That's fine.
>
> Mr. Orlove: Secondly, whether the company had cause to terminate Glenn Williams on March 2, 2007,
>
> Mr. Potter: So stipulated.
>
> Mr. Orlove: And thirdly, whether the extent or the amount of discipline administered or given to employees Leppert, Nelson and Williams in October and November of 2006 was appropriate under the circumstances of this case.
>
> Mr. Potter: And we're not willing to stipulate to that. We believe just cause standard is the standard to be applied.
>
> Mr. Orlove: That concludes our stipulations.
>
> Arbitrator Malin: Thank you. Those stipulations are received. And I do note the company's not in agreement on the statement of the third issue as presented by the union. Anything further before we move to opening statements?
>
> Mr. Potter: I don't believe so.

[Doc 12-4, pp.90-93]. See also the Company's submission. [Doc 19-5, pp.90-93].

The word "cause" was specifically referenced to mean "cause" in section 2.1 of the collective bargaining agreement. [Doc 12-4, pp.90-91] and [Doc 19-5, pp.90-91]. That section gives the Company the right to "discipline and discharge post probationary employees for cause subject to the grievance procedure". [Doc 16-2, Exh. A, § 2.1, p.11] and [Doc 19-4, § 2.1, p.11]. Thus, the parties

4

specifically referenced the standard contained in the collective bargaining agreement upon which the arbitrator was empowered to rule. Indeed, the Company refused to stipulate to the general statement of whether the extent of the discipline "was appropriate under the circumstances of this case" because it asserted the standard to be "just cause"[2], a standard found only in the collective bargaining agreement, and not at all in the last chance agreement. Given these stipulations there is no basis to conclude that the last chance agreement had superiority over the contract. Indeed, any conclusion from these facts must be that the contract standard of "cause" was the touchstone. Said another way, any claim that the arbitrator was restricted by the last chance agreement was waived by later precise stipulations.

The court is urged to read the Company's opening statement in the second arbitration session. [Doc 12-4, pp.93-100]; [Doc 19-5, pp.93-100]. The Company referenced the collective bargaining agreement, the grievances filed thereunder, the employee code of conduct and the last chance agreement as part of the factual chronology, but it never claimed the last chance agreement prohibited or foreclosed the arbitrator from examining "cause" under the collective bargaining agreement. Indeed, just to the contrary, it made reference to the employees' obligations for proper conduct under the collective bargaining agreement and its guide for employee conduct.

The arbitrator well understood his authority by reciting the stipulations presented to him: whether the Company had "cause" to discipline and terminate Williams. [Doc 19-3, p.1]. "Cause" being cause as defined in the collective bargaining agreement.

## LEGAL DISCUSSION

Now, by its motion to vacate, the Company argues the last chance agreement foreclosed the arbitrator from ruling whether the discharge was for "cause" under the collective bargaining agreement. The important points are: the Company processed the grievances over Williams' discipline and discharge

---

[2] [Doc 12-4, p.92]; [Doc 19-5, p.92].

5

under the terms of the collective bargaining agreement, never refusing to do so or to limit the question to the last chance agreement; and it stipulated to the arbitrator's authority at the outset of the hearing to determine "cause" under the collective bargaining agreement, again never limiting the question presented to the last chance agreement .  Now that the Company is faced with an adverse decision it tardily and incorrectly raises the claim that the arbitrator acted outside of his authority.  Neither it nor the Union is entitled to the proverbially "second bite at the apple".  The court's decision in *Butler Manufacturing Company* v. *United Steelworkers of America, etc.*, 336 F.3d 630, 635 (7th Cir. 2003) is apt here:

> [The Company] cannot have it both ways.  Principles of estoppel prevent a party to arbitration from taking a position before the arbitrator that invites consideration of external law, losing the arbitration, and then seeking relief from the unfavorable arbitral award in federal court by arguing that the arbitrator lacked authority to consider the law in the first instance. *AGCO Corp.* v. *Anglin,* 216 F.3d 589, 593 (7th Cir. 2000) ("If a party willingly and without reservation allows an issue to be submitted to arbitration, he cannot await the outcome and then later argue that the arbitrator lacked authority to decide the matter").

If the Company truly believed the last chance agreement foreclosed any grievance and foreclosed any consideration outside the last chance agreement it would have or should have refused to process the Union's grievances on Williams' behalf.  Or, at a minimum it would have or should have so circumscribed its responses to the grievances.  And finally, it would have or should have carefully worded the stipulations when it empowered the Arbitrator.  It never expressed any such limitations.  Indeed, its words and deeds were without limitation on the arbitrator's powers.

There are other errors in the Company's submission we are constrained to raise, lest we be found to have admitted them under LR 56.1 (a).  These errors, however, should not affect the Court's grant of summary judgment for the Union.

1. SUMF paragraphs 6 through 18, 21 through 23, 26 through 28, 33, 34 and 36 through 39 appear to be an effort to re-litigate the facts of the case presented to the arbitrator.  It is the record before the arbitrator and the

6

arbitrator's ruling which is pertinent, not facts the Company would now raise. "Courts thus do not sit to hear claims of factual or legal error by an arbitrator…". *United Paperworkers International Union* v. *Misco*, 484 U.S. 29, 38, 108 S.Ct. 364, 370 (1987).

2. SUMF paragraphs 20, 26 and 35 are legal conclusions and/or arguments, not facts, not found anywhere in the arbitrator's decision and surely as the Company should have known from the Union's earlier filings, not uncontroverted. The Union disagrees with and denies these conclusions.

3. SUMF paragraph 25 is not correct. The Union, not Williams, grieved the actions taken against Williams. Doc 12-12 and 12-13.

The cases relied on by the Company are immediately distinguishable. They address whether a last chance agreement was violated or if an arbitrator looked to other sources to decide the issues. As shown above, the arbitrator here was empowered to rule on whether there was cause for the Company to discipline and/or discharge of Williams under the standards of the collective bargaining agreement, **not** the last chance agreement. In this connection the Company's reliance on and partial quote from the seminal case of *United Steelworkers of America* v. *Enterprise Wheel and Car Corp.*[3] is seriously misplaced. The Court said more fully:

> <u>When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations.</u> The draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency. Nevertheless an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. 363 U.S. at 597; 80 S.Ct. at 1361 (emphasis added).

A closer look at the other cases cited by the Company reveal the distinction between a grievance for "cause" under the collective bargaining

---

[3] 363 U.S. 593, 80 S.Ct. 1358 (1980).

7

agreement and a grievance over whether the last chance agreement was violated. Indeed, some of those cases lend support to the Union's contentions. In *Tootsie Roll Industries, Inc.* v. *Local Union No.1, Bakery, Confectionery and Tobacco Workers' International Union*, 832 F.2d 81 (7th Cir. 1987) the Union submitted a grievance on behalf of an employee in which the Union contended the employee had not violated the last chance agreement. 832 F.2d 82. ("The Union contended that, according to the [last chance] agreement, [the employee's] six-month probationary period began to run…and thus her May 2 absence did not fall within the agreement's time limit."). That contention, therefore, put the matter within the four corner of the last chance agreement, and the arbitrator's resort to terms and conditions in the collective agreement was deemed improper.

The same is the case in *Coca-Cola Bottling Company of St.Louis* v. *Teamsters Local Union No. 688*, 959 F.2d 1438 (8th Cir. 1992). There the court determined "'just cause" under the terms of the collective bargaining agreement was irrelevant to [the employee's] discharge pursuant to the last chance agreement and should not have been considered". 959 F.2d at 1440. Here, of course, the parties stipulated that "cause" under the collective bargaining agreement was the issue the arbitrator was to decide.

Likewise, in *Boise Cascade Corporation* v. *Paper Allied-Industrial, Chemical and Energy Workers (PACE), Local 7-0159*, 309 F.3d 1075 (8th Cir.2002), "Although the arbitrator stated that the sole issue before him was whether [the employee] had violated the [last chance agreement], he effectively undertook a 'just cause' analysis…". 309 F.3d 1085. Again here, the arbitrator was directed to use the "cause" clause of the collective bargaining agreement.

In two cases cited by the Company[4] reliance is placed on *Bakers Union Factory, #326* v. *ITT Continental Baking Company, Inc.*, 749 F.2d 350 (6th Cir. 1984). In that case, as in the others cited by the Company, the issue was last chance agreement. Accordingly, the court said:

---

[4] *International Union of Operating Engineers, Local 351* v. *Cooper Natural Resources, Inc.*, 163 F.3d 916 (5th Cir, 1999); and *Ohio Edison Company* v. *Ohio Edison Joint Council, etc.* 947 F. 786 (6th Cir.1991).

8

> Our tradition of deference to arbitral decisions is not based on solicitude for arbitrators. That tradition is based on our desire to give effect to <u>the parties' chosen means of dispute resolution</u>. When a party claims that the chosen means of dispute resolution is a private settlement, we have no reason to defer to the arbitrator's decision. 749 F.2d at 354, emphasis added.

Here "the parties chosen means of dispute resolution" was "cause" under the collective bargaining agreement. To the extent that the arbitrator fashioned a remedy which incorporated an element of the last chance agreement (restitution to off set backpay), while not erroneous, is in any case a judgment he was entitled to make as within the scope of the parties' grant of authority. See the quote from *United Steelworkers of America* v. *Enterprise Wheel and Car Corp., supra*, p.7.

In *Anheuser-Busch, Inc.* v. *Beer, Soft Drink, Water, etc., Local Union No. 744,* 280 F.3d 1133, (7th Cir.2002), a matter not involving a last chance agreement, the parties stipulated to a particular issue. 280 F.3d at 1135. The court concluded, "Thus, while the parties may agree to arbitration, they may also agree, as they did in this contract, to limit the arbitrator's authority…". 280 F.3d at 1144. The same may be said here: the parties may agree to the arbitrator's authority.

## CONCLUSION

The Company's whole reliance is the fact there exists in this case a last chance agreement and therefore, it argues, the arbitrator may not have strayed from its terms. It tardily elevates the last chance agreement over its grant of authority to the arbitrator. The Company would be correct if the issue presented was whether the last chance agreement was violated. But the issue presented and stipulated to the arbitrator was "Whether the company had cause,…the word used in section 2.1 of the contract… to discipline…Glenn Williams" and "whether the company had cause to terminate Glenn Williams". [Doc 12-4, pp.91-92]; [Doc 19-5, pp.91-92]. Indeed, the Company refused to stipulate to the general statement of whether the extent of the discipline "was appropriate under the

9

circumstances of this case" because it asserted the standard to be "just cause"[5]. That standard exists only in the collective bargaining agreement and not in the last chance agreement. Given these stipulations there is no basis to conclude that the last chance agreement had superiority over the contract and the parties' stipulated empowerment to the arbitrator. Indeed, any conclusion from these facts must be that the contract standard of "cause" was the stipulated touchstone. Said another way, any claim that the arbitrator was restricted to the last chance agreement was waived, or the Company is estopped, by its specific stipulations, tardily raised here.

Upon the foregoing the Union prays for an order

1. To confirm and enforce the Arbitrator's award; and

2. For such other relief as the court may deem just and proper.

                      Respectfully submitted,

                      /s/Charles Orlove
                      One of Plaintiffs Attorneys

Charles Orlove
Jacobs, Burns, Orlove, Stanton and Hernandez
122 South Michigan Avenue, Suite 1720
Chicago, Illinois 60603-6145
Phone: 312-327-3426
Facsimile: 312-580-7175
E-Mail: corlove@jbosh.com

---

[5] [Doc 12-4, p.92]; [Doc 19-5, p.92].

## CERTIFICATE OF SERVICE

I, Charles Orlove, an attorney, certify that I caused the foregoing document to be served upon the following person by filing it using the ECF system on June 25, 2008:

> Terry L. Potter
> Husch Blackwell Sanders LLP
> 720 Olive Street - Suite 2400
> St. Louis, Missouri 63101